UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| **RAUL H. AGUILAR,** | ) |
| | ) |
| Plaintiff, | ) Case No. 09-6015 AJW |
| | ) |
| v. | ) |
| | ) MEMORANDUM OF DECISION |
| **MICHAEL J. ASTRUE,** | ) |
| **Commissioner of the Social** | ) |
| **Security Administration,** | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

Plaintiff filed this action for judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying plaintiff's application for supplemental security income ("SSI") benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

The parties are familiar with the procedural history of this case, which is summarized in the Joint Stipulation. [See JS 2]. In an August 1, 2008 hearing decision that constitutes the Commissioner's final decision in this matter, an administrative law judge (the "ALJ") concluded that plaintiff was "not disabled" under the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2 ("the grids").

[Administrative Record ("AR") 64-75].[1]

## Standard of Review

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r, Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Social Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the [Commissioner's] decision, the [Commissioner's] conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

## Discussion

### Borderline age situation

Plaintiff contends that the ALJ erred in applying the grids in a mechanical fashion in a "borderline age situation." [See JS 4-12].

The ALJ made the following findings. Plaintiff had severe, medically determinable impairments consisting of degenerative disc disease of the lumbar spine and hepatitis C infection, as well as a medically determinable, nonsevere adjustment disorder. [AR 68]. Plaintiff's impairments did not meet or medically equal a listed impairment. [AR 69]. Plaintiff retained the residual functional capacity ("RFC") to perform the full range of light work, and therefore could not perform his past relevant work at the medium level of

---

[1] Plaintiff filed several prior applications for benefits, all of which were denied. The ALJ properly applied administrative res judicata to find plaintiff not disabled on or before June 17, 2004, the date of the most recent final administrative decision. [See AR 67-68]. See generally Lester v. Chater, 81 F.3d 821, 827 (9th Cir. 1995); Chavez v. Bowen, 844 F.2d 691, 693 (9th Cir. 1988).

2

exertion. [AR 73]. Born on November 15, 1958, plaintiff was currently 49 years old and was a "younger individual." [AR 74]. Plaintiff was "not able to communicate effectively in English, and is considered in the same way as an individual who is illiterate in English." [AR 74]. Plaintiff had no transferable job skills. [AR 74].

The grids direct a finding of "not disabled" for a "younger individual" who is "illiterate or unable to communicate in English" and has unskilled or no past relevant work history. 20 C.F.R. Pt. 404, Subpt. P, App. 2, §§ 201.00(h)(1), 202.16. A "younger individual" is defined as one who is between the ages of 18 and 49 years old. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(h)(1). Plaintiff was 49 years old on the date of the ALJ's decision and thus was a "younger individual." However, the regulations also state that "[f]or individuals who are age 45-49, age is a less advantageous factor for making an adjustment to other work than for those who are age 18-44." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(h)(1). Individuals aged 50 to 54 are defined as persons "closely approaching advanced age," and once a person attains age 50, age is considered "a factor which significantly limits vocational adaptability . . . ." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.00(d); see 20 C.F.R. §§ 404.1563(d), 416.963(d). When individuals closely approaching advanced age are limited to light work, have no past work experience or can no longer perform vocationally relevant past work, have no transferable skills, and the "individual's vocational scope is further significantly limited by illiteracy and inability to communicate in English, a finding of disability is warranted." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.00(d). Thus, if plaintiff had attained the age of 50 by the date the ALJ issued his decision, the grids would have directed a finding of not disabled. See 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.09.

Although the grid rules rely on bright-line age categories, the Commissioner's regulations state that "[w]e will not apply the age categories mechanically in a borderline situation. If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case." 20 C.F.R. §§ 404.1563(d), 416.963(d); see Heckler v. Campbell, 461 U.S. 458, 462 n.5 (1983)(explaining that the grid rules "only describe major functional and vocational patterns," and that by declaring that ALJs "will not apply the age categories mechanically in a borderline situation" and recognizing that some limitations are not factored into the grid

rules, "the regulations provide that the rules will be applied only when they described a claimant's abilities and limitations accurately")(internal quotation marks and citations omitted); Russell v. Bowen, 856 F.2d 81, 85 (9th Cir. 1988)("[T]his court has held that 'the regulation specifically provides that age categories will not be applied 'mechanically in a borderline situation.'")(ellipsis omitted)(quoting Calvin v. Heckler, 782 F.2d 802, 805 (9th Cir.1986) and 20 C.F.R. § 404.1563(a) (1987), and citing Gonzales v. Sec'y of Health & Human Servs., 784 F.2d 1417, 1420 (9th Cir.1986)("It is incumbent upon the Secretary to decrease his reliance upon the grids in cases where the individual claimant's circumstances approach the upper limits of the grid's guidelines.")); see also SSR 86-8, 1986 WL 68636, at *6 (stating that age categories are "not arbitrary limits" and "are not applied mechanically in borderline cases"); SSR 83-10, 1983 WL 31251, at *8 ("The regulations provide that older age is an increasingly adverse vocational factor for persons with severe impairments. The chronological ages 45, 50, 55 and 60 may be critical to a decision. However, the regulations also provide that age categories are not applied mechanically in borderline situations."); SSR 82-46c, 1982 WL 31427, at *6, *8 (stating that a borderline situation "exists when there would be a shift in results caused by 'the passage of a few days or months,'" and that the grid age guidelines are to be applied "flexibly to avoid dramatic shifts in results")(quoting 43 Fed.Reg. 55349, 55359 (1978)).

Plaintiff argues that because he was 49 years, 8 months, and 17 days old on the date of the ALJ's decision, the ALJ should not have applied the grids in a mechanical fashion, that is, without considering whether his "borderline" age warranted application of the "closely approaching advanced age" category using a flexible application of the grids. Plaintiff's argument has merit.

The Commissioner's regulations state that a borderline situation exists if: (1) " you are within a few days to a few months of reaching an older age category," and (2) "using the older age category would result in a determination or decision that you are disabled . . . ." 20 C.F.R. §§ 404.1563(b), 416.963(b). "No fixed guidelines as to when a borderline situation exists are provided since such guidelines would themselves reflect a mechanical approach." SSR 83-10, 1983 WL 31251, at *8.

In this case, the relevant date for determining plaintiff's age category–or whether a borderline situation exists—is the date of the ALJ's decision, which is the Commissioner's final decision in this case. See Russell, 856 F.2d at 83-84 (using the date of the Commissioner's final decision, which was the ALJ's

4

1 hearing decision, to determine whether a borderline situation was presented in a social security disability case); Lewis v. Comm'r of Soc. Sec., 666 F.Supp.2d 730, 736 (E.D. Mich. 2009)(noting that "[b]orderline-age consideration has been measured as of the date of the ALJ's decision for SSI purposes").[2]

Plaintiff was 3 months and 14 days shy of his 50th birthday when the ALJ found him not disabled on August 1, 2008. "Few" means "a small number of" or "not many." Compact Oxford English Dictionary of Current English few (rev. ed. 2008). Three-and-a-half months is a "few" months. Moreover, numerous courts "have held that a person within six months of the next higher age category is considered 'borderline.'" Lewis, 666 F.Supp.2d at 738 (citing Pickard v. Comm'r of Soc. Sec., 224 F.Supp.2d 1161, 1168 (W.D. Tenn. 2002)(stating that courts have "generally conclud[ed] that the borderline range falls somewhere around six months from the older age category," and collecting cases); see Daniels v. Apfel, 154 F.3d 1129, 1133 (10th Cir. 1998)(65 days); Kane v. Heckler, 776 F.2d 1130, 1132-1133 (3d Cir. 1985)(48 days); Pickard, 224 F.Supp.2d at 1166 (four months and one day); Leyba v. Chater, 983 F.Supp. 1048, 1051 (D.N.M. 1996) (three and a half months); Davis v. Shalala, 883 F.Supp. 828, 838 (E.D.N.Y. 1995)(three months); Roush v. Heckler, 632 F.Supp. 710, 711 (S.D. Ohio 1984)(six months); Hill v. Sullivan, 769 F.Supp. 467, 471 (W.D.N.Y. 1983) (three months and two days); see also Jenkins v. Astrue, 628 F.Supp.2d 1140, 1143 (C.D. Cal. 2009)(noting that in a March 2008 decision constituting the Commissioner's final decision in the case, the Appeals Council concluded that a borderline situation existed where the claimant was within six months of attaining age 55 on the date his insured status expired).

Defendant argues that this is not a "per se" borderline age situation because plaintiff "was more

---

[2] In some social security disability cases, the relevant date for determining whether a borderline situation exists may be the date on which the claimant's insured status expired rather than the date of the Commissioner's final decision. See Daniels v. Apfel, 154 F.3d 1129, 1132 n.4 (10th Cir. 1998)("Because disability must be shown by expiration of insured status, the last day of [the claimant's] insured status . . . is the appropriate date for determining applicability of the grids."); Kane v. Heckler, 776 F.2d 1130, 1132-1133 (3d Cir. 1985)(remanding for consideration of application of 20 C.F.R. § 404.1563(a) where the claimant's insured status expired 48 days before his 55th birthday, and the claimant could have been found disabled if the higher age category was applied); Lewis, 666 F.Supp.2d at 736 (noting that courts have not always been consistent in selecting the relevant date for applying the borderline situation regulation, and that "HALLEX II-5-3-2 instructs adjudicators to consider applying this interpretation 'whenever the age category changes within a few months after the alleged onset date, the date last insured (or the prescribed period) or the date of the ALJ's decision'").

5

than a few days short" of age 50. [JS 8 (quoting Russell, 856 F.2d at 84)]. Russell, however, is distinguishable. In that case, the Ninth Circuit held that a borderline situation did not exist where the claimant "was more than a few days short of" the next age category. Russell, 856 F.2d at 84. Defendant contends that Russell stands for the proposition that a claimant who is "more than a few days short of" attaining the next age category does not represent a borderline age situation. Russell's holding, however, is not so narrow. The Ninth Circuit also relied on the fact that the claimant was 59 years 5 months old on the date of the ALJ's decision, and "was in fact closer to" his 59th birthday than his 60th birthday, which was seven months away. Russell, 856 F.2d at 83-84. Other courts, some citing Russell, have held that a gap of seven months or more did not qualify as a borderline situation. See Lambert v. Chater, 96 F.3d 469, 470 (10th Cir. 1996)(seven months); Underwood v. Bowen, 828 F.2d 1081, 1082 (5th Cir. 1987)(ten months); Lewis, 666 F.Supp.2d at 739 (eleven months); Zamora v. Astrue, 2009 WL 635194, at *1 (E.D. Cal. Mar. 11, 2009)(seven months); Martin v. Astrue, 2008 WL 3071484, at *9 (W.D. Pa. Aug. 1, 2008)(191 days); Barrett v. Apfel, 40 F.Supp.2d 31, 39 (D. Mass. 1999)(nine months).

Thus, contrary to defendant's argument, Russell does not create a "per se" rule limiting a borderline situation to one involving "a few days," nor is Russell inconsistent with a finding that plaintiff was a "few months" away from "closely approaching advanced age" on the date the ALJ rendered his decision.

The second element of a "borderline situation" also is present here because deeming plaintiff to be a person "closely approaching advanced age" would mandate a finding of disability under the grids. See 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.09. Nothing in the ALJ's decision (or elsewhere in the record) indicates that the ALJ recognized the possibility that a borderline age situation existed and exercised his discretion to reject that possibility or to decline to apply the higher age category.

Defendant argues that the ALJ "very reasonably declined to exercise his discretion" not to apply the higher age category, and that there is no authority supporting plaintiff's argument that the ALJ erred by failing to indicate in his decision that he recognized the existence of a borderline situation and had exercised his discretion not to apply the higher age category. [See JS 7- 10].

The borderline age regulation states that the Commissioner "mandates that the Commissioner *"will not apply* the age categories mechanically in a borderline situation," and "*will consider* whether to use the older age category after evaluating the overall impact of all the factors of your case." 20 C.F.R. §§

6

404.1563(b), 416.963(b)(italics added). Thus, the regulation "mandates that the ALJ not apply the grid mechanistically." Bowie v. Comm'r of Soc. Sec., 539 F.3d 395, 404 (6th Cir. 2008)(Moore, J., dissenting). The regulations, however, do not explicitly require the ALJ to address the issue in his decision. Published circuit and district court decisions considering whether the ALJ's failure to do so nonetheless may warrant reversal have reached inconsistent results. Compare, e.g., Daniels, 154 F.3d at 1133 n.5 ("The ALJ never addressed the issue of whether [the claimant] fell within the borderline or whether he should be considered in the next age bracket. Determining whether a claimant falls within a borderline situation appears to be a factual rather than discretionary matter, and the ALJ erred by not making the necessary factual finding. Even were this considered a discretionary matter, the ALJ would have abused that discretion by failing to exercise it.")(citations omitted) and Kane, 776 F.2d at 1133-1134 (vacating and remanding where the claimant's insured status expired 48 days before his 55th birthday, use of the higher age category could have resulted in a finding of disability, and the ALJ failed explicitly to consider the issue of a borderline situation in his decision) with Bowie, 539 F.3d at 400-403 (distinguishing Daniels and Kane, and holding that "an ALJ does not have a procedural obligation to address a claimant's borderline age situation in his opinion or explain his reasons for arriving at a particular age categorization," but acknowledging that "lack of an explanation may in some cases mean that the ALJ's ultimate decision is not supported by sufficient evidence," and that circumstances could be presented that "would merit some discussion of proper age categorization in order to meet the substantial-evidence threshold"); see also Pickard, 224 F.Supp.2d at 1169 (holding that "[t]he ALJ's failure to address the borderline issue and to explain his choice of age category under the circumstances of this case impede this court's ability to review his application of § 404.1563(a) and may indeed violate 20 C.F.R. § 404.953, which requires the ALJ to include in his decision findings of fact and reasons for his conclusions").

      The Ninth Circuit has not issued a published decision on point. However, in an unpublished decision involving a claimant who was one month shy of his 55th birthday on his date last insured, and who could have been found disabled based on the older age category, the Ninth Circuit held:

      [t]he hearing transcripts and ALJ decision do not reflect consideration of [the claimant's] borderline age status. Although the ALJ sought testimony of a vocational expert, he directed the expert not to consider age in his testimony. Moreover, the discussion section of the

7

ALJ's decision makes no mention of 20 C.F.R. § 404.1563(b) or the claimant's one-month proximity to "person of advanced age" status under 20 C.F.R. § 404.1563(e). For these reasons, the record does not provide sufficient basis for review.

Schiel v. Comm'r of Social Sec., 267 Fed.Appx. 660, 661, 2008 WL 467773, at *1 (9th Cir. Feb. 21, 2008)(reversing and remanding for further administrative proceedings).[3]

For all that appears from his decision, the ALJ simply matched plaintiff's vocational criteria with the facially-applicable grid rule without considering plaintiff's borderline age status. [See AR 74 ("[Plaintiff] is currently 49 years old, which is also defined as a younger individual, age 18-49 (20 C.F.R. 404.1563 and 416.963).")]. This case presents a borderline age situation. Adhering to the reasoning of Schiel, and relying on the persuasive value of Daniels and Kane, the absence of any indication in the record that the ALJ exercised his discretion to consider plaintiff's borderline age status and determine whether to apply the higher age category precludes meaningful review of the ALJ's decision under the substantial evidence standard. Accordingly, the ALJ's application of the grids is not supported by substantial evidence and warrants reversal.

**RFC Assessment**

Plaintiff contends that substantial evidence did not support the ALJ's RFC assessment. Specifically, plaintiff challenges the ALJ's evaluation of the medical opinion evidence and plaintiff's subjective symptom testimony. [JS 12-20].

**Medical opinion evidence**

The ALJ's RFC finding was supported by the opinion of Concepcion Enriquez, M.D., who conducted a consultative internal medical examination on May 12, 2006. [AR 269-279]. Dr. Enriquez elicited a history, reviewed unspecified medical records, conducted a physical and neurological examination, and administered x-rays, blood tests, and an EKG. [AR 269-272]. Dr. Enriquez wrote that plaintiff had a history of hepatitis C with no liver stigmata or ascites noted. Blood tests showed elevated alkaline phosphatase levels but otherwise were within normal limits. Plaintiff gave a history of prostate

---

[3] Under Rule 32.1 of the Federal Rules of Appellate Procedure and 9th Cir. Rule 36-3, an unpublished Ninth Circuit decision issued on or after January 1, 2007 is not precedent but "may be cited to the courts of this circuit . . . ." 9th Cir. Rule 36-3(a)&(b).

8

problems, but he exhibited no tenderness in the hypogastric area and no signs of renal failure. Plaintiff complained of back pain. He displayed tenderness and decreased range of motion in the lumbosacral spine, as well as signs of radiculopathy. An x-ray showed moderate degenerative disc disease from L4 to S1. An MRI taken in December 2004 showed mild to moderate multilevel degenerative changes. Plaintiff had a history of joint pain in both hands, but his bilateral motor strength, sensation, reflexes, and fine manipulation were intact. An x-ray of his right hand was normal. Plaintiff's EKG showed sinus rhythm, indeterminate axis, slow limb lead voltage. [AR 272]. Dr. Enriquez opined that plaintiff could perform light work. [AR 273].

The ALJ permissibly credited that uncontradicted opinion, which was based on independent clinical findings and was consistent with the nonexamining state agency physician's opinion. [See AR 280-288]. See Thomas, 278 F.3d at 957 ("The opinions of non-treating or non- examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record."). The ALJ reviewed and summarized the treating source medical evidence, which was essentially consistent with the history and clinical findings described in Dr. Enriquez's report. [AR 68-69, 71-72]. Plaintiff notes that he was diagnosed with hepatitis C. He sought treatment for complaints of low back pain, degenerative disc disease, bilateral knee pain, obesity, hepatitis C, insomnia, hand pain, and gastroesophageal upset. An April 2007 MRI showed bilateral facet hypertrophy from L3 to S1 and mild disc bulge at L3-4. [JS 354 (citing AR 292, 294, 313, 315, 339, 354-355, 366, 385, 398]. Those conditions were adequately considered by Dr. Enriquez. Accordingly, the ALJ did not commit legal error in evaluating the medical evidence.

**Subjective symptom testimony**

Plaintiff contends that the ALJ did not articulate legally sufficient reasons for rejecting the alleged severity of plaintiff's subjective complaints.

Once a disability claimant produces evidence of an underlying physical or mental impairment that is reasonably likely to be the source of his or her subjective symptoms, the adjudicator is required to consider all subjective testimony as to the severity of the symptoms. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also 20 C.F.R. §§

1   404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated). Although the ALJ may
2   then disregard the subjective testimony he considers not credible, he must provide specific, convincing
3   reasons for doing so. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001); see also Moisa, 367 F.3d
4   at 885 (stating that in the absence of evidence of malingering, an ALJ may not dismiss the subjective
5   testimony of claimant without providing "clear and convincing reasons"). The ALJ's credibility findings
6   "must be sufficiently specific to allow a reviewing court to conclude that the ALJ rejected the claimant's
7   testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367
8   F.3d at 885; see Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) (enumerating factors that
9   bear on the credibility of subjective complaints); Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir.
10  1989)(same). If the ALJ's assessment of the claimant's testimony is reasonable and is supported by
11  substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857
12  (9th Cir. 2001).

13      The ALJ summarized the objective medical evidence and rationally concluded that it did not
14  corroborate plaintiff's subjective complaints of disabling back and joint pain and fatigue. [See AR 70-72,
15  82-89]. See Burch, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for
16  discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."). The ALJ
17  permissibly considered Dr. Enriquez's opinion in assessing the credibility of plaintiff's subjective
18  symptoms. See Light, 119 F.3d at 792. While not dispositive, testimony from plaintiff and a friend that
19  he could eat, dress, and bathe independently, perform some light cleaning and household chores, do
20  errands, shop, cook, listen to music, take walks, manage his own funds, go places alone using public
21  transportation, visit with family and friends, watch television, and read the Bible also supported the ALJ's
22  determination that plaintiff was not totally disabled by his impairments. [See AR 198, 200, 206, 209, 298].
23  See Bray v. Comm'r of Social Sec. Admin., 554 F.3d 1219, 1221, 1227 (9th Cir. 2009)(stating that in
24  making a credibility determination, the ALJ may weigh inconsistencies between the claimant's testimony
25  and his or her conduct, daily activities, and work record, among other factors, and holding that the ALJ
26  permissibly discounted the credibility of the claimant's subjective symptoms based on her ability to clean,
27  cook, walk her dogs, and drive to appointments). In addition, plaintiff said that he had stopped working
28

because he was laid off rather than because of his allegedly disabling impairments. This, along with the lack of evidence of a significant deterioration in his condition since then, were factors the ALJ was entitled to take into account. [AR 73, 92]. See Bruton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001)(holding that the ALJ did not err in discrediting the claimant's subjective complaints where the claimant "stated at the administrative hearing and to at least one of his doctors that he left his job because he was laid off, rather than because he was injured"). Finally, the ALJ observed that the record indicated that plaintiff's treatment and medications had been relatively effective in controlling his symptoms. [See AR 71-73, 83]. See Carmickle v. Comm'r, Soc. Sec. Admin. 533 F.3d 1155, 1162 (9th Cir. 2008)(noting that "a conservative course of treatment can undermine allegations of debilitating pain").

The ALJ provided clear and convincing reasons supporting his credibility finding. Accordingly, plaintiff's contention lacks merit.

**Remedy**

A remand for further administrative proceedings is the appropriate remedy to permit the ALJ to resolve the outstanding issue regarding application of the borderline age policy. See Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2000) (explaining that "[g]enerally when a court of appeals reverses an administrative determination, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation'")(quoting INS v. Ventura, 537 U.S. 12, 16 (2002) (per curiam)).

**Conclusion**

For the reasons stated above, the Commissioner's decision is not supported by substantial evidence and does not reflect application of the proper legal standards. Accordingly, the Commissioner's decision is reversed, and this case is remanded to the Commissioner for further administrative proceedings consistent with this memorandum of decision.

**IT IS SO ORDERED.**

May 11, 2010

_____
ANDREW J. WISTRICH
United States Magistrate Judge